SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

WENDY THOMAS (NYBN 4315420)
Special Assistant United States Attorney

    450 Golden Gate Avenue
    San Francisco, California  94102
    Telephone: (415) 436-6809
    Facsimile: (415) 436-7234
    E-Mail: wendy.thomas@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07 0318 CRB |
| | ) | |
| Plaintiff, | ) | |
| | ) | **UNITED STATES' SENTENCING** |
| v. | ) | **MEMORANDUM** |
| | ) | |
| ENRIQUE MACEDO-JARAMILLO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.  INTRODUCTION

On August 1, 2007, the defendant pled guilty to the sole Count of the captioned

Indictment, a violation of 8 U.S.C. § 1326, being a previously deported alien found in the United

States.  The defendant pled "open" in that there was no plea agreement between the parties.

Sentencing has been set for October 17, 2007.

The United States agrees with U.S. Probation's calculation of the defendant's Criminal

History Category of VI and believes the Court could adopt either an Offense Level of 17 or 21.

This would yield an applicable Guidelines range of 51–63 months (using an Offense Level of 17)

or 77-96 months (using an Offense Level of 21).  If the Court finds an Offense Level of 17, then

the United States respectfully requests that the Court sentence the defendant to 60 months of

1    imprisonment, the same as U.S. Probation's mid-range recommendation.  In the event the Court

2    finds an Offense Level of 21, then the United States respectfully requests that the Court sentence

3    the defendant to 77 months of imprisonment, the low-range of the Guidelines.  The United States

4    also requests that this sentence be served consecutively to the twelve month term of

5    imprisonment imposed in the Northern District of California in Docket Number CR 03-0078

6    MMC.  In the view of the United States, a sentence within this range is wholly "sufficient, but

7    not greater than necessary, to comply with the purposes" of the statutory sentencing scheme.  18

8    U.S.C. § 3553(a).

9

10    ## II.  DISCUSSION OF GUIDELINES CALCULATIONS

11    **A.      U.S.S.G. § 2L1.2(a) (base offense level)**

12    The defendant pled guilty to a violation of 8 U.S.C. § 1326, which specifically references

13    U.S.S.G. § 2L1.2.  *See* Guidelines Manual Appendix A.  Accordingly, the defendant's base

14    offense level should be 8.

15

16    **B.      U.S.S.G. § 2L1.2(b)(1)(A) & (B) (serious drug trafficking offense)**

17    **1.      Defendant's 2002 conviction constitutes a drug-trafficking offense**

18    **using the categorical *Taylor* analysis.**

19    Pursuant to U.S.S.G. § 2L1.2(b)(1)(B), the base offense level is increased by 12 levels

20    "[i]f the defendant previously was deported, or unlawfully remained in the United States, after ...

21    a conviction for a felony that is a drug trafficking offense for which the sentence imposed was 13

22    months or less."  The defendant's 2002 conviction under Cal. H. & S. Code § 11351 for the sale

23    of narcotics qualifies as such a conviction.

24    The term "drug trafficking offense" is defined in Application Note 1(B)(iv) to mean "an

25    offense under federal, state, or local law that prohibits the manufacture, import, export,

26    distribution, or dispensing of a controlled substance (or a counterfeit substance) or the

27    possession of a controlled substance (or a counterfeit substance) with intent to manufacture,

28    import, export, distribute, or dispense."

1   On March 6, 2002, the defendant pled guilty to Possession/Purchase of a Controlled
2   Substance for Sale (San Francisco Superior Court, Docket # 184829), in violation of Cal. H. &
3   S. Code § 11351.  He received a sentence of 90 days jail.  *See* PSR ¶ 29.

4   In order to determine whether this conviction qualifies as a "drug trafficking offense,"
5   courts employ *Taylor*'s categorical and modified categorical analyses.  *See Taylor v. United*
6   *States*, 495 U.S. 575 (1990).  In *United States v. Morales-Perez*, the Ninth Circuit determined
7   that a conviction under Cal. H. & S. § 11351 categorically constitutes a drug trafficking offense
8   under U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A). *See United States v. Morales-Perez*,
9   467 F.3d 1219 (9th Cir. 2006).  The Ninth Circuit has found similarly in subsequent cases.  *See*
10  *United States v. Borguez-Borbon*, 223 Fed. Appx. 672 (9th Cir. 2007); *see also United States v.*
11  *Martinie*, 220 Fed. Appx. 690 (9th Cir. 2007).

12  Defendant's guilty plea in the 2002 case unequivocally establishes that he pled guilty to
13  drug trafficking offenses as defined U.S.S.G. § 2L1.2(b)(1)(B) and Application Note 1(B)(iv).

14  **2.    Defendant's 1993 conviction constitutes a drug trafficking**
15  **offense using the modified categorical *Taylor* analysis.**

16  Pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i), the base offense level is increased by 16 points
17  "[i]f the defendant previously was deported, or unlawfully remained in the United States, after ...
18  a conviction for a felony that is a drug trafficking offense for which the sentence imposed
19  exceeded 13 months."  The defendant was convicted under Cal. H. & S. Code § 11352 on three
20  separate occasions.  The United States believes defendant's 1993 conviction under Cal. H. & S.
21  Code § 11352 for the sale of cocaine qualifies as a drug trafficking offense.  *See* Exhibit A
22  (charging document); Exhibit B (judgment).

23  The United States concedes that the defendant's convictions under Cal. H. & S. Code §
24  11352 do not categorically qualify as "drug trafficking offenses."  *See United States v. Kovac*,
25  367 F.3d 1116 (9th Cir. 2004).  Because § 11352 criminalizes
26  such acts as the transportation of narcotics for personal use; offers to transport, sell, furnish,
27  administer, or give away narcotics; and solicitation of the prohibited acts, it is broader than the
28  Guidelines's definition of a drug trafficking offense.

UNITED STATES' SENTENCING MEMORANDUM
CR 07 0318 CRB                    3

1   Though Cal. H. & S. Code § 11352 is broader than a generic drug trafficking offense, the

2   defendant's convictions may still qualify under *Taylor*'s modified categorical approach.  Under

3   this method, a court may look "to the terms of the charging document, the terms of a plea

4   agreement or transcript of colloquy between judge and defendant in which the factual basis for

5   the plea was confirmed by the defendant, or to some comparable judicial record of this

6   information" to determine whether the defendant is guilty of a drug trafficking offense."[1]

7   *Shepard v. United States,* 544 U.S. 13, 26 (2005).

8   On April 19, 1993, a three-count criminal information was lodged against the defendant

9   in Santa Clara County, California.  *See* Exhibit A.  Count one of the information charged the

10  defendant with a violation of "Health and Safety Code Section 11352," and specifically alleged

11  that defendant (under the name Perfecto Lopez) "did sell and offer to sell a controlled substance,

12  to wit: COCAINE."  *See* Exhibit A.  On July 7, 1993, the defendant pled guilty to count one of

13  the information and was sentenced to three years imprisonment.  *See* Exhibit B.  Using the

14  *Shepard* analysis, the defendant's 1993 conviction under § 11352 qualifies as a drug trafficking

15  offense.

16  Ninth Circuit precedent makes plain that "a guilty plea conclusively proves the factual

17  allegations contained in the [charging document]."  *United States v. Harris,* 108 F.3d 1107, 1109

18  (9th Cir. 1997); *see United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 852 (9th Cir. 2005)

19  ("By pleading guilty, Rodriguez admitted the factual allegations in the indictment."); *United*

20  *States v. Velasco-Medina*, 305 F.3d 839, 852 (9th Cir. 2002) ("... Velasco-Medina pleaded guilty

21  to Count One of the Information.  As noted, Count One of the Information contained all of the

22  elements for generic burglary.  By pleading guilty to Count One, Velasco-Medina admitted the

23

24  [1] Though Justice Thomas cast doubt on some of the Supreme Court precedents
25  underlying the *Shepard* case, many of those cases—including *Shepard* itself—still stand as the
    binding law of the land.  *See, e.g., Taylor*, 495 U.S. at 575.  Indeed, while Justice Thomas could
26  not "join Part III of the [plurality] opinion" in *Shepard*, the quoted language above, allowing
    courts to look at the charging document and plea colloquy, comes from Part IV of the *Shepard*
27  plurality opinion with which Justice Thomas did concur, making that portion of the opinion a
28  majority opinion of the Court.  *See Shepard*, 544 U.S. at 26.

1    facts alleged therein."); *United States v. Bonat*, 106 F.3d 1472, 1477–78 (9th Cir. 1997) ("Even

2    if we agreed with Bonat that the district court only relied on the charging document, we would

3    affirm because the Judgment on Plea of Guilty shows that Bonat did in fact plead guilty to

4    second degree burglary as charged in the Information, and the Information included all the

5    elements of generic burglary."); *United States v. Williams*, 47 F.3d 993, 995 (9th Cir. 1995)

6    ("Appellant's argument that the California statute encompasses consensual entries of

7    non-residential structures is unavailing because the charging instrument to which he pleaded

8    nolo contendere specified the 'unlawful' entry of a 'residence.'").  Exhibits A and B demonstrate

9    that the defendant pled guilty to the generic elements of a drug trafficking offense—that he sold

10   cocaine.

11        Thus, the defendant's guilty plea to the information's charge that he "did sell and offer to

12   sell a controlled substance, to wit: COCAINE" necessarily establishes that he distributed a

13   controlled substance as per the generic definition of a drug trafficking crime.  Exhibit A; B; *see,*

14   *e.g., Harris,* 108 F.3d at 1109.  California's § 11352 *potentially* may encompass the mere

15   transportation of a controlled substance, for example, but such potentialities were conclusively

16   extinguished when the defendant pled guilty to an information specifically charging him with

17   unlawfully *selling cocaine*, a generic drug trafficking offense.

18        Defendant's guilty pleas in both the 1993 and 2002 cases unequivocally establish that he

19   pled guilty to drug trafficking offenses as defined U.S.S.G. § 2L1.2(b)(1)(A) & (B) and

20   Application Note 1(B)(iv).  In the event the Court determines that the 1993 conviction

21   constitutes a drug trafficking offense under the modified categorical *Taylor* analysis, then his

22   Offense Level should thus be enhanced by 16 levels since he received a three year sentence.  In

23   the event the Court determines that the 1993 conviction does not constitute a drug trafficking

24   offense under the modified categorical *Taylor* analysis, then the defendant's Offense Level

25   should be enhanced 12 levels for the 2002 conviction where he received a 90 day sentence.

26

27        **C.    U.S.S.G. § 3E1.1 (Acceptance of Responsibility)**

28        The United States respectfully recommends that the defendant be entitled to a two-point

1   reduction in offense level under U.S.S.G. § 3E1.1(a) because he has "clearly demonstrate[d]

2   acceptance of responsibility for his offense" under the terms of § 3E1.1(a) by truthfully

3   admitting to the facts establishing his guilt.

4          The defendant is likewise entitled to a third point for acceptance of responsibility under

5   the distinct standard set forth in U.S.S.G. § 3E1.1(b).  To qualify for this third point, the

6   defendant must have "assisted authorities in the investigation or prosecution of his own

7   misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby

8   permitting the government to avoid preparing for trial and permitting the government and the

9   court to allocate their resources efficiently." § 3E1.1(b).  Because the defendant pled guilty in

10  this case in a timely manner that avoided any preparation for trial, the United States hereby

11  moves that he be granted this third point as well.

12

13                          **III.  OTHER § 3553(a) FACTORS**

14         In light of the *Booker* Court's severance of 18 U.S.C. § 3553(b)(1) from the federal

15  sentencing statute, sentencing courts are now obliged to consider the factors set forth in §

16  3553(a), including the need for the sentence to reflect the seriousness of the offense, afford

17  adequate deterrence, protect the public from further criminal conduct by the defendant, and

18  avoid sentencing disparities among similarly situated defendants.  The United States submits that

19  a mid-range sentence under an Offense Level of 17 or a low-range sentence under an Offense

20  Level of 21, within the advisory Guidelines range, are both reasonable and appropriate in this

21  case.

22         The United States makes this recommendation in part because the defendant's history

23  contains both mitigating personal history and aggravating criminal history - however, the United

24  States does not believe that a downward departure or variance is warranted.  § 3553(a)(1).  The

25  defendant has no verified employment or personal residence in the United States.  *See* PSR ¶ 40

26  and ¶ 46.  He does have, however, a wife, three children, medical problems, and possibly a

27  history of depression (though this cannot be known since he waived his interview with U.S.

28  Probation).  *See* PSR ¶ 39–46.

UNITED STATES' SENTENCING MEMORANDUM
CR 07 0318 CRB                                6

However, the defendant has an extensive criminal history which provides aggravating circumstances in support of a substantial sentence. § 3553(a)(1).  The defendant's criminal history, qualifying him for Criminal History Category VI, demonstrates his clear, willful, and repeated inability to comply with the laws of this country.  *See United States v. Segura-Del Real*, 83 F.3d 275, 279 n.1 (9th Cir. 1996) ("[D]efendants in Category VI, the highest criminal history category, are, not surprisingly, the defendants who demonstrate the most limited likelihood of successful rehabilitation and the greatest likelihood of recidivism."); *United States v. Carrillo-Alvarez*, 3 F.3d 316, 320 (9th Cir. 1993) ("[D]efendants in category VI are by definition the most intractable of all offenders.").  The defendant has a long history of convictions, almost all of them felony convictions: *See* PSR ¶ 25 (1991 felony narcotics conviction), ¶ 26 (1993 felony narcotics conviction);¶ 27 (1996 felony narcotics conviction); ¶ 28 (1998 felony illegal reentry conviction); ¶ 29 (2002 felony narcotics conviction); ¶ 30 (2003 felony illegal reentry conviction); ¶ 31 (2007 misdemeanor narcotics conviction).  Such a lengthy and serious criminal record, which includes multiple drug trafficking convictions, does not even take into account the six separate deportation orders the defendant has each violated and ignored.  *See* PSR ¶ 5 (deportations in March 1991, October 1992, September 1994, October 1996, August 1999, and March 2007).

The defendant's extensive criminal record, multiple deportation violations, and obvious failure to rehabilitate himself whether on probation or in custody, support a lengthy sentence to "promote respect for the law," § 3553(a)(2)(A), to "afford adequate deterrence to criminal conduct," § 3553(a)(2)(B), and "to protect the public from further crimes of the defendant," § 3553(a)(2)(C).  The defendant has previously been convicted of illegal reentry *twice* in the Northern District of California.  He has not found the previous sentences imposed by the Court (twenty-four months and fifty-four months, respectively) to be enough of a deterrent to prevent subsequent reentry to the country and continued involvement in criminal activity.

Finally, a Guidelines-range sentence would especially respect "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  § 3553(a)(6).  The U.S. Sentencing Commission's Guidelines

Manual provides a well-considered, nationally applicable standard, and there are no factors suggesting that the defendant should receive a sentence any lower than those routinely meted out to criminal alien defendants with similar records around the United States.

## IV.  DEFENDANT'S SUPERVISED RELEASE SENTENCE

Pursuant to U.S.S.G. § 7B1.3(f), any term of imprisonment "imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release."  U.S.S.G. § 7B1.3(f).  The provisions of Chapter 7 of the Guidelines Manual are advisory "policy statements".  U.S.S.G. Ch. 7, part A(3)(a).  Pursuant to U.S.S.G. § 5G1.3(f), Application Note 3(C), in cases where the defendant's federal probation is revoked, the Guidelines recommend "that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation." U.S.S.G. § 5G1.3(f), Application Note 3(C).  *See also United States v. Steffen*, 251 F.3d 1273 (9th Cir. 2001) (district court did not commit plain error by ordering sentences for mail fraud and travel fraud to run consecutively to previously imposed sentence for escape pursuant to § 5G1.3 and § 7B1.3, where defendant was on probation for earlier wire fraud offense when he committed instant offenses).

A Probation form 12 was filed against the defendant on June 14, 2007, relating to U.S.D.C. Case Number CR 03-00078-001 MMC.  On August 8, 2007, the defendant admitted guilt to the first charge contained in the Probation form 12 and was sentenced to twelve months prison by the Honorable Maxime M. Chesney.  The United States respectfully requests that the defendant's sentence on the supervised release violation be imposed consecutively to his sentence in the instant case, consistent with the policy recommendations of the Sentencing Guidelines.

## V.  CONCLUSION

For the foregoing reasons, the United States respectfully requests that if the Court finds

1  an Offense Level of 17 in the instant case that the Court sentence the defendant to 60 months of

2  imprisonment, the same as U.S. Probation's mid-range recommendation.  In the event the Court

3  finds an Offense Level of 21, then the United States respectfully requests that the Court sentence

4  the defendant to 77 months of imprisonment, the low-range of the Guidelines.  The United States

5  further respectfully requests that the Court find that a sentence of this range is "reasonable"

6  under the factors set forth in 18 U.S.C. § 3553(a).  The United States further respectfully

7  requests that this sentence be served consecutively to the twelve month term of imprisonment

8  imposed in the Northern District of California in CR 03-00078-001 MMC.  In addition to the

9  above-referenced requests, the United States respectfully recommends that the Court include as

10  part of its sentence three years of supervised release and payment of a $100 special assessment.

12  DATED: October 15, 2007                    Respectfully submitted,

13                                             SCOTT N. SCHOOLS
                                               United States Attorney

15                                                     /s
16                                             _____
                                               WENDY THOMAS
17                                             Special Assistant United States Attorney