BARRY J. PORTMAN
Federal Public Defender
ELIZABETH M. FALK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant MACEDO-JARAMILLO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | No. CR 07-318 CRB |
| | ) | |
| vs. | ) | DEFENDANT'S SENTENCING MEMORANDUM |
| | ) | |
| ENRIQUE MACEDO JARAMILLO, | ) | Date: October 17, 2007 |
| | ) | Time: 2:15 p.m. |
| Defendant. | ) | Court: The Honorable Charles R. Breyer |

**INTRODUCTION**

Mr. Enrique Macedo-Jaramillo now stands before the Court, having pled guilty to one count of illegal re-entry following deportation, in violation of 8 U.S.C. § 1326. All parties agree[1] that the Court may calculate Mr. Macedo-Jaramillo's Guideline range at Offense Level 17, Criminal History category 6, with a corresponding Guideline range of 51-63 months. The Probation Officer has recommended a sentence of 60 months. Mr. Macedo-Jaramillo now asks this Court to sentence him to the low end of the Guideline range, or 51 months; in the alternative, Mr. Macedo-Jaramillo requests the Court to adopt the Probation Officer and the government's proposed sentence, and to

---

[1] The government alternatively argues that the Court may calculate Mr. Macedo-Jaramillo's Guideline range at 77-96 months by looking to the charging document from a 1993 conviction for Transport/Sale of Cocaine, under Cal. Health and Safety Code 11352. *See* Government Sentencing Memorandum at 1. Herein, Mr. Macedo-Jaramillo argues that, under *United States v. Kovac*, 367 F.3d 1116 (9th Cir. 2004) the Court should not accept the language of the charging document alone to enhance Mr. Macedo-Jaramillo's sentence, and to accept the applicable Guideline range as the range calculated by the Probation Department; 51-63 months.

sentence him to no more than 60 months imprisonment.

## BACKGROUND

This case requires the Court to weigh a few simple aggravating and mitigating factors. The single aggravating factor weighing against Mr. Macedo-Jaramillo is his criminal record, including the number of deportations and illegal re-entry convictions that he has suffered. Without question, Mr. Macedo-Jaramillo continues to return to this country after serving his numerous sentences for illegal-reentry. However, this aggravating factor should be considered in context with the many mitigating factors in this case recognized by the Probation Officer; namely, Mr. Macedo is an older defendant (62) who suffers from numerous physical ailments that will make incarceration extremely uncomfortable and reduces the likelihood of recidivism. Simply put, his age and physical condition greatly reduces the likelihood that Mr. Macedo will commit new crimes, largely due to the fact that upon release from the Bureau of Prisons after the lengthy sentence he now faces, Mr. Macedo will be too old and infirm to commit new crimes or return to the United States. These factors, coupled with Mr. Macedo's apparent mental health problems described *infra*, justify Mr. Macedo's request for a low-end Guideline sentence.

## ARGUMENT

### I.    THE PROPER GUIDELINE RANGE IS 51-63 MONTHS

From the outset, the United States Probation Officer assigned to this matter calculated the proper Guideline range as 51-63 months, after enhancing Mr. Macedo-Jaramillo's sentence twelve levels for his 2002 conviction under Cal. Health and Safety Code 11351. *See* PSR at ¶12, 29. In accordance with Supreme Court precedent and *United States v. Kovac*, 367 F.3d 1116 (9th Cir. 2004), the Probation Officer's final Guideline calculations are correct and should be adopted by this Court.

The government is correct in its analysis that a conviction under California Health and Safety Code Section 11352 does not qualify categorically as a "drug trafficking offense" under the analysis

set forth in *Taylor v. United States*, 495 U.S. 575 (1990). The government is also correct that both *Taylor* and *Kovac* direct this Court to additionally review Mr. Macedo's prior convictions under a modified categorical approach. Under *Kovac*, "a modified categorical examination is appropriate in a 'narrow range of cases' where the statute criminalizes conduct that would not constitute a qualifying controlled-substance offense, but where 'documentation or judicially noticeable facts . . . clearly establish that the conviction is a predicate conviction for enhancement purposes. *Id*. at 1119 (citing *United States v. Corona-Sanchez*, 291 F.3d 1201, 1211 (9th Cir. 2002). "The government has the burden to establish clearly and unequivocally that the conviction was based on all the elements of a qualifying predicate offense." *Kovac*, 367 F.3d at 1119. "While a complaint or indictment can be one component of the required underlying documentation, as a charging paper, it alone is not sufficient." *Id.*

Here, the sole piece of evidence relied upon by the government in its application of the modified categorical approach in this matter is the charging document. At no point has the Supreme Court sanction use of a charging document alone to enhance a sentence under the modified categorical approach. *See Shepard v. United State*s, 544 U.S. 13, 13, 22 (2005)("Developments in the law since [*United States v.] Taylor* . . . provide a further reason to adhere to the demanding requirement that any sentence under the ACCA rest on a showing that a prior conviction 'necessarily' involved (*and a prior plea necessarily admitted*) facts equating to generic burglary")(emphasis added). There is no indication here of the facts admitted by Mr. Macedo-Jaramillo in connection with his plea to Cal. H & S Code 11352; the government has presented no evidence of a plea colloquy, plea agreement, minute order of a plea, or any indication whatsoever that by pleading guilty to the statute Cal. H&S Code 11352, he was pleading to the particular "selling" conduct alleged in the information, as opposed to one of the numerous other modes of conduct punishable under the statute. Moreover, the Information itself additionally alleges "offer to sell", which could be interpreted as solicitation under Cal. H& S Code 11352. The Judgment itself is no help; it only indicates that Mr. Macedo's plea was to "Transport/Sell Cocaine." *See* Government

Memorandum, Exhibit B, Abstract of Judgment.

Under circumstances such as those presented in the instant case, the language of the charging document in an ambiguous statute is an insufficient record on which to base a sentencing enhancement. The facts of the *Shepard* case are illuminating in this respect. In *Shepard*, as in the instant case, Shepard's plea colloquies and/or plea agreements were unavailable. There, the Supreme Court found the information listed in each of the charging documents for Shepard's burglary conviction insufficient under the modified categorical approach, even though, for example, the first burglary complaint alleged that Shepard "did break and enter in the night time the building, ship, vessel, or vehicle, the property of Jerri Conthran" and "the place of the offense was alleged as 30 Harlem Street." *Shepard*, 544 U.S. at 31-32 (O'Connor, J. dissenting). There, the charging document, standing alone, contained sufficient facts to limit Shepard's conviction to burglary of a building. Common sense belies the proposition that "30 Harlem Street" is somehow a ship, vessel, or vehicle.

Had Shepard's plea to the charging document containing a burgled entity of "30 Harlem Street" been deemed a sufficient admission of the facts contained therein, the Supreme Court in *Shepard* would have reached a different result. Clearly, the Supreme Court did not consider Shepard's plea to the complaint listing "30 Harlem Street" as an admission on his part that the property burgled was an actual building, despite the fact that vehicles, ships and vessels do not have addresses. *Nor did the Supreme Court interpret that the state had sufficiently narrowed the statutory charge at issue to a building by listing "30 Harlem Street" as the burgled entity*. The government now asks this Court to take the extra leap that the Supreme Court refused to do in *Shepard,* and argues that the information at issue charging that Mr. Macedo-Jaramillo did "sell and offer to sell a controlled substance" should be considered a sufficient factual basis to prove that the ambiguous statute at issue had been narrowed to "selling" and Mr. Macedo specifically pled to that construction of the statute. Due to the dearth of a record before it, this Court should decline the government's invitation.

The very experienced Probation Officer assigned to this case has wisely declined to enhance Mr. Macedo-Jaramillo's sentence by 16 levels, and only seeks a 12 level enhancement from this Court for Mr. Macedo-Jaramillo's unambiguous conviction under Cal. H& S Code 11351, for which he served a sentence of 90 days. *See* PSR at 12. The government has not objected to any of the findings of the report. *See* PSR Addendum. A 16 level enhancement is only appropriate for unambiguous, unequivocal "drug trafficking offenses" for which the sentence imposed exceeded 13 months. *See* U.S.S.G. § 2L1.2(b)(1)(A)(i) and Application Note 1(B)(iv). The record produced by the government does not meet the government's "clear and unequivocal burden" to prove that Mr. Macedo's 1993 conviction under Cal Health and Safety Code Section 11352 qualifies; the government itself concedes that the Court may chose either range. *See* Government Sentencing Memorandum at 1. At no point in *Shepard* does the Supreme Court suggest that review of a charging document alone, absent a plea agreement, plea colloquy, or further fact finding by the convicting court, is sufficient to survive the modified categorical approach. As such, the proper enhancement for Mr. Macedo-Jaramillo's sentence is a 12 level increase above the standard offense level of 8, and the proper adjusted Guideline offense level is 17.

II.     **UNDER *BOOKER*, A 51 MONTH SENTENCE IS REASONABLE**

After *United States v. Booker*, 125 S.Ct 738 (2005). the applicable Sentencing Guideline range of 51-63 months is guiding, but not binding, upon this Court. "A district court must consider the guideline range, but must also consider the other directives set forth in 18 U.S.C. § 3553(a). Thus, under *Booker*, courts must treat the Guidelines as just one of a number of sentencing factors." *United States v. Ranum*, 353 F.Supp. 2d 984, 985 (E.D. Wisc. 2005). Under *Booker*, the United States Sentencing Guidelines are merely "advisory," and sentencing courts are required to consider all of the factors listed in 18 U.S.C. § 3553(a) in imposing sentence. *Booker*, 125 S.Ct. 738, 757 (2005). Significantly, "there is no presumption of *unreasonableness* that attaches to a sentence that varies from the range. A sentence outside the range need only be adequately explained and consistent

with § 3553(a) factors." *United States v. Jordan*, 435 F.3d 693, 698 (7th Cir. 2006) (emphasis in original).

The primary directive in § 3553(a) is that the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with" the purposes of sentencing. See 18 U.S.C. § 3553(a) (emphasis added). Those purposes include the need:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
- to create adequate deterrence;
- to protect the public from future crimes of the defendant; and
- to provide the defendant with necessary treatment and training.

18 U.S.C. § 3553(a)(2).

Section 3553(a) directs sentencing courts to consider a number of additional factors as well, including:

- the nature and circumstances of the offense, § 3553(a)(1);
- the history and characteristics of the defendant, § 3553(a)(1);
- the kinds of sentences available, § 3553(a)(3);
- the sentencing guideline range, § 3553(a)(4);
- pertinent Sentencing Commission policy statements, § 3553(a)(5);
- the need to avoid unwarranted sentencing disparities, § 3553(a)(6);
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

As *Booker* emphasized, under the Sentencing Reform Act, "**[n]o limitation** shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." *Booker*, 125 S.Ct. at 760 (quoting 18 U.S.C. § 3661)(emphasis added). In the wake of *Booker*, courts are therefore required to consider factors which the guidelines discourage or reject, such as a defendant's family circumstances (§ 5H1.6), his drug dependence (§ 5H1.4), and the age of his prior convictions.

To the extent that the sentencing factors that the Court is bound to consider pursuant to 18 U.S.C. § 3553(a) conflict with the Guidelines or the policy statements of the Guidelines, the district court must, after *Booker*, consider the 3553(a) factors equally with the Guidelines. This result was forecasted by at least one district court. *See Ranum*, 353 F.Supp.2d at 986:

> The guidelines prohibition of considering these factors [age, mental and emotional condition, physical condition including drug or alcohol dependence, employment record, family ties or responsibilities, socio-economic status, civic contributions, lack of guidance as a youth] cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant. . . thus, in cases in which a defendant's history and character are positive, consideration of all the 3553(a) factors may call for a sentence outside of the Guideline range.
>
> Further, § 3553(a)(2)(D) requires a sentencing court to evaluate the need to provide the defendant with education, training, treatment, or medical care in the most effective manner.  This directive might conflict with the guidelines, which in many cases offer only prison.  *See* U.S.S.G. 5C1.1. ("In some cases, a defendant's educational, treatment, or medical needs may be better served by a sentence which permits the offender to remain in the community.")

*Id.* at 986; *see also United States v. Myers*, 353 F.Supp.2d 1026, 1029 (S.D. Iowa 2005)(stating that "the work of a sentencing court, then, is to evaluate all the interest, as represented by the statutory factors, through careful and patient attention to all parties involved.")  Once the Court determines and considers the advisory Guideline range, this Court must then equally evaluate the factors enunciated under Title 18, Section 3553(a) to determine a just and appropriate sentence.

In the case of Mr. Macedo, a low-end sentence of 51 months is appropriate.  Prior to the days of *Booker,* the Ninth Circuit has long recognized that a "combination of factors" could together constitute a mitigating circumstance justifying a low-end sentence.  *See United States v. Cook*, 938 F.2d 149 (9th Cir. 1991).  In *Cook*, the Court explained that "[t]here is not reason to be so literal-minded as to hold that a combination of factors cannot together constitute a 'mitigating circumstance.'" *Id.* at 153.  Although the court no longer speaks in the language of "departures," the mitigating factors in Mr. Macedo's favor, considered under the terms of 18 U.S.C. § 3553, demonstrate that a 51 month sentence is the sentence "no greater than necessary" to fulfil the goals of sentencing enunciated by Congress.

**B.     By Weighing the Aggravating and Mitigating Factors in this Case, the Court Should Arrive at a Sentence of 51 Months, and Should Not Impose a Sentence Greater than 60 Months.**

As stated in the introduction, the mitigating and aggravating factors present in the instant case are clear.  On the aggravating factor side, Mr. Macedo-Jaramillo has multiple criminal convictions,

including two previous federal convictions for illegal re-entry and multiple deportation from the United States. These transgressions are well documented by both the Presentence Report and the Government's Sentencing Memorandum. By arguing for a low-end sentence, Mr. Macedo-Jaramillo does not mean to minimize the problematic nature of his criminal record or his immigration record. He does ask the Court to note that his convictions do not involve 1.) any use of weapons or violence towards others, 3.) destruction of the property or security of another person, 3.) any indication that he is a danger to society. Mr. Macedo's drug use has not escalated to harming others; as he is now 62 years old and faces a lengthy federal sentence, it is unlikely that he will engage in violent or threatening behavior in the future.

On the mitigating factor side, Mr. Macedo-Jaramillo is already 62 years old. He suffers from numerous physical ailments that make him appear even older than his years. Medical records from the Bureau of Prisons indicate that Mr. Macedo-Jaramillo suffers from Type II diabetes, gastritis (inflammation of the stomach, most likely exacerbated by years of drug use), hyperlipidemia (a blood disorder) and extreme arthritis. He also suffers from a hernia that is so severe that Mr. Macedo cannot stand up straight. *See* Declaration of Elizabeth Falk in Support of Defendant's Sentencing Memorandum at Exhibit A, filed herewith under seal. In records from FCI Victorville, Mr. Macedo reports that he suffers from chronic pain. Each of these factors mean that incarceration for Mr. Macedo is more uncomfortable than the typical Bureau of Prisons inmate. Given his age, his infirmities, and the difficulty that Mr. Macedo has walking upright at this juncture, it is hard to imagine that Mr. Macedo will have the stamina to even return to the United States after a 51 month sentence. A lengthier sentence is not necessary, given the personal health characteristics of Mr. Macedo.

Also concerning undersigned defense counsel is Mr. Macedo-Jaramillo's mental state. As best as undersigned counsel is able to observe, Mr. Macedo currently suffers from a deep depression that is rooted in hopelessness about his life situation. His communications with undersigned counsel express unemotional despair about the sentence that he faces. The medical records attached to the

1  Falk Declaration indicate that Mr. Macedo-Jaramillo alternately seeks and refuses treatment for his
2  physical ailments when he is incarcerated, further evidence of the hopelessness that Mr. Macedo
3  appears to feel. Years of drug abuse have clearly taken their toll, both physically and emotionally, on
4  Mr. Macedo-Jaramillo. The notes of previous defense counsel regarding conversations with Mr.
5  Macedo-Jaramillo in 2003 do not reflect a similar communication mode. As such, undersigned
6  counsel believes that Mr. Macedo's mental condition is worsening. Under these circumstances, a 51
7  month low-end sentence is likely to have the same deterrent effect as a 60 months sentence; both are
8  significant amounts of time that will undoubtedly slow Mr. Macedo's mobility and diminish his
9  mental wherewithal to return to the United States. As the appropriate sentence is the sentence "no
10 greater than necessary" to fulfill the goals of the sentencing statute, a low end sentence of 51 months
11 is accordingly requested. *See* 18 U.S.C. § 3553(a).

## CONCLUSION

13 For the aforementioned reasons, defendant Enrique Macedo-Jaramillo hereby requests this
14 Court to sentence him to 51 months of imprisonment. If the Court rejects Mr. Macedo's request, Mr.
15 Macedo alternatively requests a sentence of no more than 60 months of imprisonment, as
16 recommended by the U.S. Probation Department and the government.

17 Dated:      October 16, 2007

                                          Respectfully submitted,

                                          BARRY J. PORTMAN
                                          Federal Public Defender

                                               /S/

                                          ELIZABETH M. FALK
                                          Assistant Federal Public Defender

DEFENDANT'S SENTENCING MEMORANDUM
*United States v. Macedo-Jaramillo*
CR 07-0318 CRB                         - 9 -